Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4218 | **DATE** | 7/29/02 |
| **CASE TITLE** | USEEOC vs. R.R. Donnelley | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, , defendant R. R. Donnelley & Son's motion for summary judgment (5-1) is granted as to the request for back pay beyond May 28, 1998 but is otherwise denied. Plaintiff EEOC's motion to strike (11-1) is denied as moot. The final pretrial order remains due on ~~9/30/02~~ 10/31/02, and the case remains set for trial on 1/6/03 at 9:45 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | AUG 0 1 2002 | | |
| | Notified counsel by telephone. | | date docketed | | 14 |
| ✓ | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| OR | courtroom deputy's initials | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 01 C 4218 |
| R. R. DONNELLEY & SONS COMPANY, INC. | ) ) ) ) | |
| Defendant. | ) | |

**DOCKETED**
AUG 0 1 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The Equal Employment Opportunity Commission brought this action under the Americans with Disabilities Act on behalf of David Mateski, claiming that R.R. Donnelley & Sons Company failed to reasonably accommodate Mateski's disability and terminated him because of his disability. This case is before the Court on Donnelley's motion for summary judgment.

### Facts

David Mateski is trained as a graphic artist. He is paralyzed from his lower chest down, a condition that was caused by a spinal disease called transverse myelitis; he now uses a wheelchair and colostomy bag. In late 1997, J.C. Penney hired Donnelley to convert its paper catalog materials into internet-accessible materials on a "rush job" basis. As a result, Donnelley needed additional assistance in its On-Line Services Division – the division charged

with handling the J.C. Penney job. In January 1998, Katherine Turk of Donnelley hired Mateski for a temporary position with the On-Line Services Division. Mateski was informed that the job would last a couple months and that there was a possibility of future permanent employment thereafter.

Mateski began working for Donnelley on Thursday, January 8, 1998. His first morning on the job, Mateski arrived approximately 10 minutes late for work due to a blizzard. A short while after arriving, Mateski asked Turk if he could have a few hours off the following Monday to bring his car in for repairs. Turk initially told Mateski that it would be fine if he arrived a few hours late for work. Upon checking her calendar, Turk realized that she also would not be in the office on Monday. Turk then informed Mateski that since she would not be available to train him on Monday, she would prefer if he just took the whole day off.

Shortly before 10:00 a.m., Mateski experienced an uncontrolled bowel movement. At that point, Mateski informed Turk that he needed to go home because of a problem with his colostomy bag and that due to the blizzard, he would not be able to return to work that day. Mateski told Turk that he knew that "this doesn't look good on my first day of work" and that "[t]his doesn't happen to me very often." According to Mateski, Turk had a disgusted look on her face when Mateski was explaining the problem, but gave him permission to leave work.

Shortly thereafter, Turk called Frank Ottolino, a placement counselor from Digital People, the agency that placed Mateski with Donnelley. She informed Ottolino that she needed to terminate Mateski's employment with Donnelley due to concerns about his reliability. Ottolino called Mateski and informed him that Donnelley no longer needed his services. Mateski explained to Ottolino the reason for his departure and offered to come in on Monday – the day

-2-

Turk previously had allowed him to take off. Ottolino relayed this information to Turk, but Turk declined to give Mateski his job back. Mateski filed a charge of discrimination with the EEOC on January 15, 1998.

On May 28, 1998, Donnelley sent Mateski a letter apologizing for the January incident. In the letter, Donnelley offered Mateski "the same work opportunity it offered [him] on January 4, 1998 -- a temporary graphic artist position in the On-Line Services department, or some substantially equivalent position." Defendant's Motion for Summary Judgment, Exhibit 1. Donnelley's offer of reinstatement was unconditional; Mateski was not asked to release any of his claims in exchange for the offered position. In addition, Donnelley sent Mateski a check for $4160.00 – the amount Mateski would have earned if he had remained employed in the original position for eight weeks. Mateski rejected Donnelley's offer.

## Discussion

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, courts must construe all facts and draw all reasonable and justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The EEOC argues that Donnelley failed to accommodate Mateski's disability and terminated him because of his disability in violation of the ADA. The EEOC contends that Mateski is entitled to back pay, emotional distress damages, and punitive damages stemming from Donnelley's actions. Donnelley seeks summary judgment on the issue of liability and also seeks to limit Mateski's

-3-

damages if it is found liable.

I.  *Mateski's ADA Claims*

The EEOC's complaint alleges that Donnelley failed to provide a reasonable accommodation for Mateski and terminated him because of his disability. In order to recover under the ADA for an employer's failure to accommodate, the EEOC must show: (1) Mateski was or is disabled; (2) Donnelley was aware of the disability; and (3) Mateski was a "qualified individual" under the ADA with respect to the position at issue. *EEOC v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(2). A person is a "qualified individual" under the ADA if he or she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Accordingly, to be protected by the ADA, plaintiff must have "'the requisite skill, experience, education and other job-related requirements of the employment position' and must be able to 'perform the essential functions of such position' with or without accommodation." *Haschmann v. Time Warner Entertainment Company, L.P.*, 151 F.3d 591, 599 (7th Cir. 1998) (quoting 29 C.F.R. § 1630.2(m)).

Donnelley does not dispute that Mateski is disabled, that it was aware of the disability, or that he had the necessary training and skills of a graphic artist. Instead, Donnelley argues that Mateski was not a "qualified individual" under the ADA because he could not meet an essential function of the temporary graphic artist position: regular attendance at the job site. In support of its argument, Donnelley cites a number of cases for the proposition that regular

-4-

attendance is an important aspect of most jobs. *See* Defendant's Memorandum in Support of Summary Judgment at 4-5. The cited cases are distinguishable, however, in that those plaintiffs were guilty of substantially greater attendance problems than Mateski and/or left work without informing their supervisors. *See, e.g., Amadio v. Ford Motor Company*, 238 F.3d 919 (7th Cir. 2000) (plaintiff absent from work more than 70 weeks during the last three years of his employment). Furthermore, Mateski provides evidence that he had few, if any, attendance problems with previous employers; that the problem he experienced was "rare"; and had it not been for a blizzard on the day in question that made travel difficult, he would have returned to work for a good portion of the day. In addition, the evidence reflects that Turk had agreed to let Mateski take off his third day on the job, suggesting that inability to attend work daily did not render him unqualified for the position. Mateski has provided evidence from which a reasonable jury could infer that, with some accommodation, he could have performed all the essential functions of the job. Donnelley's motion on this basis is denied.

The EEOC also makes a discriminatory termination claim on behalf Mateski. To survive summary judgment on this claim, the EEOC must provide evidence from which a jury could infer that (1) Mateski is disabled within the meaning of the ADA; (2) he is a "qualified individual" under the ADA; and (3) he suffered an adverse employment action because of his disability. *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950 (7th Cir. 2000). As we have discussed above, Donnelley does not dispute the first element, and it is not entitled to summary judgment on the second. As to the third, there is no question that Mateski suffered an adverse employment action – he was terminated after one day on the job. Further, the EEOC provides evidence from which a jury reasonably could find that Mateski's termination was "because of his

disability." Specifically, it points to evidence that Mateski's absence from work for one day was not an issue when the reason was to attend to car repairs, but it became an issue after he experienced an incontinence problem that resulted directly from his disability. Though Donnelley disputes that Mateski's termination had anything to do with his disability, the evidence provided is sufficient to defeat summary judgment on this issue as well.

## II. *Damages Issues*

### A. *Back Pay*

On May 28, 1998, Donnelley sent Mateski a letter that outlined an unconditional offer of reinstatement and a check for back pay in the amount of $4,160.00. Mateski rejected the offer. Donnelley first argues that Mateski's refusal to accept its unconditional offer of reinstatement tolls Donnelley's back pay liability from that point forward. The Court agrees. In *Ford Motor Company v. EEOC*, 458 U.S. 219 (1982), the Supreme Court addressed this issue in circumstances similar to this case and determined that an employer charged with discrimination can "toll the accrual of backpay liability by unconditionally offering the claimant the job he sought, and thereby providing him with an opportunity to minimize damages." *Id.* at 232. Accordingly, a claimant who rejects such an offer forfeits his claim to back pay from that point forward. *Id.*

The EEOC first argues that the *Ford Motor* rule does not apply because Donnelley's offer of new employment was not "substantially equivalent" to the original position. Mateski's own testimony is to the contrary: he testifies at various points that the May 1998 job was the "same opportunity" as the job he took in January. *E.g.*, Mateski Deposition at 109. The EEOC next argues, based on dicta in *Ford Motor*, that a claimant can reject an employer's job

offer and still accrue back pay damages in "special circumstances." It contends that special circumstances exist here because at the time of Donnelley's offer, Mateski had already accepted alternative permanent employment and had procured a mortgage based on that salary. However, merely accepting a new job that, for whatever reason, a claimant prefers does not constitute special circumstances. Indeed, *Ford Motor* involved claimants who, at the time of Ford's job offer, were working at jobs they chose not to forego. Accordingly, we conclude that Mateski is not entitled to back pay damages beyond May 28, 1998.

Donnelley also contends that it should not be responsible for back pay damages prior to May 28, 1998. Donnelley argues, citing *Holstein v. City of Chicago*, 29 F3d 1145 (7th Cir. 1994) and other cases, that a defendant's offer to satisfy a plaintiff's entire demand moots the plaintiff's claim. Defendant's Reply Memorandum at 7. The parties dispute, however, whether Donnelley's check represented the total back pay amount to which Mateski would be entitled if he succeeded on his claims. The EEOC argues that Mateski's employment would have lasted longer than the eight weeks that the check represented; in contrast, Donnelley argues that the check represented *more* than Mateski was owed. For these reasons, the Court declines to completely remove the back pay issue from the case.

### B.   *Emotional Distress Damages*

The parties agree that the EEOC's claim for emotional distress damages on Mateski's behalf is limited to "garden variety" emotional damages – *i.e.,* compensation for humiliation, embarrassment, and similar emotions. Donnelley now seeks to create a cap on these damages. Specifically, Donnelley argues that it has "demonstrated that Mateski's damages [for emotional distress] are limited to no more than $25,000." Defendant's Reply Memorandum at 5.

Donnelley's "demonstration," however, consists of its own assessment that Mateski's emotional distress damages are not worth more than $25,000. The Court agrees with Donnelley that a damage award cannot be sustained if it is "monstrously excessive," lacks a rational connection to the evidence, or is out of line with awards in similar cases. *See, e.g., Tullis v. Townley Engineering and Manufacturing Co.*, 243 F.3d 1058, 1066 (7th Cir. 2001). But the determination of damages is, at least in the first instance, for the jury. Donnelley has cited no authority permitting the Court, without hearing all the evidence or observing the demeanor of the witness, to set the outer limits of damages before trial.

### C. *Punitive Damages*

Donnelley also argues that there is no basis for punitive damages in this case. The Supreme Court's decision in *Kolstad v. American Dental Association*, 527 U.S. 526 (1999), provides the framework for evaluating punitive damages in ADA cases. Under *Kolstad*, punitive damages may be awarded against an employer based on the actions of an employee if the employee was a "managerial agent" acting within the scope of her employment. *Id.* at 543. As the Supreme Court noted, however, whether an employee constitutes a managerial agent "requires a fact-intensive inquiry." *Id.* "In making this determination, the court should review the type of authority that the employer has given to the employee, the amount of discretion that the employee has in what is done and how it is accomplished." *Id.* (citations omitted).

Donnelley argues that Turk was not a "managerial agent;" she did not hold the title of Manager nor was she able to "independently decide how many temporary workers were needed or how many total workers were needed, if at all, on a particular project." Defendant's Memorandum in Support of Summary Judgment at 10. Donnelley further argues that Turk

-8-

supervised almost exclusively temporary employees, not Donnelley employees. In contrast, the EEOC offers evidence that Turk was solely responsible for hiring and firing Mateski and had a fairly wide berth of discretion in making such hiring decisions. At this point, we cannot conclude as a matter of law that Turk was not a managerial agent as the law defines that term.

Donnelley next asserts that the EEOC cannot show that Turk acted with the requisite intent to warrant a punitive damages award. An award of punitive damages is justified only when the defendant engaged in intentional discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." *Bruso*, 239 F.3d at 857 (quoting 42 U.S.C. § 1981a(b)(1)). A plaintiff may satisfy this mental state requirement by showing that the relevant individuals knew of or were familiar with the anti-discrimination laws. *Id.* at 858. The EEOC has presented evidence that Turk was familiar with the anti-discrimination principles of the ADA, and it is therefore inappropriate to strike the claim for punitive damages on this basis.

Donnelley finally argues that punitive damages are inappropriate because it engaged in good faith efforts to comply with the law. *Kolstad* provides that "in the punitive damages context, an employer may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with'" the law. *Id.* at 545-46 (citations omitted); *see also Bruso v. United Airlines, Inc.*, 239 F.3d 848, 858 (7th Cir. 2001) ("[e]ven if the plaintiff establishes that the employer's managerial agents recklessly disregarded his federally protected rights while acting within the scope of their employment, the employer may avoid liability for punitive damages if it can show that it engaged in good faith efforts to implement an anti-discrimination policy").

-9-

Donnelley has provided evidence that it maintains accommodation and anti-discrimination policies, sponsors "diversity councils" aimed at fostering diversity, and implemented a diversity training program, among other things. In response, the EEOC provides evidence that Donnelley failed to offer its employees ADA training prior to Mateski's termination and argues that the existence of an anti-discrimination policy alone is not enough to avoid liability. It is true that "although the implementation of a written or formal anti-discrimination policy is relevant to evaluating an employer's good faith efforts ... it is not sufficient in and of itself to insulate an employer from a punitive damages award." *Bruso*, 239 F.3d at 858. Though Donnelley's efforts ultimately may preclude a punitive damages award, it is premature to determine that the EEOC is not entitled to such an award as a matter of law.

As a final matter, the EEOC filed a motion to strike the affidavit of Kim Williams. The Court did not rely on the affidavit in ruling on the summary judgment motion and the motion to strike is denied as moot.

## Conclusion

For the reasons stated above, Defendant R.R. Donnelley & Son's motion for summary judgment [item # 5-1] is granted as to the request for back pay beyond May 28, 1998 but is otherwise denied. Plaintiff EEOC's motion to strike [item #11-1] is denied as moot. The final pretrial order remains due on September 30, 2002, and the case remains set for trial on January 6, 2003 at 9:45 a.m.

Dated: July 29, 2002

MATTHEW F. KENNELLY
United States District Judge